630 A.2d 527

**YORK PAID FIRE FIGHTERS ASSOCIATION, LOCAL 627, IAFF, AFL–CIO, by its Trustee Ad Litem, Carlos R. Fuentes, Association President, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 17, 1992.

Decided Aug. 6, 1993.

Lawrence F. Clark, Jr., for petitioner.

James L. Crawford and Peter Lassi, for respondent.

Willan F. Joseph, for intervenor City of York.

Before SMITH, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

This case involves the filing of a charge of unfair labor practices by the York Paid Fire Fighters Association (union) with the Pennsylvania Labor Relations Board (PLRB). The charge alleged that the City of York unilaterally implemented a policy regarding the employment in light duty positions of firefighters who are temporarily ill or injured. The PLRB issued a complaint and notice of hearing with respect to the charge.

In addition to the unfair labor practice charge, the union also filed a grievance pursuant to the collective bargaining agreement between the union and the city. In its answer to the unfair labor practice complaint, the city requested that the PLRB defer to the arbitration of the grievance. In a letter to the PLRB, counsel for the union agreed to the deferral. An arbitrator denied the grievance on April 10, 1991. Subsequently, the PLRB issued a decision deferring to the arbitrator's decision and dismissing the unfair labor practice charge. The union has appealed.

Before addressing the union's arguments, it is necessary to review the PLRB's deferral policy. In the PLRB's decision in *PLRB v. Pine Grove Area School District,* 10 Pa.Pub. Employes R. ¶ 10167 (1979), in which it established its deferral policy, the PLRB cited *Spielberg Manufacturing,* 112 NLRB Dec. (CCH) 1080, 36 L.R.R.M. (BNA) 1152 (1955), in which the National Labor Relations Board (NLRB) held that it would defer to an already issued arbitration award where it is established that (1) the proceedings appeared to have been fair and regular; (2) the parties had agreed to be bound; and (3) the decision of the arbitrator is not clearly repugnant to the purposes and policies of the National Labor Relations Act. The PLRB in *Pine Grove* also cited *Dubo Manufacturing,* 142 NLRB Dec. (CCH) 431, 53 L.R.R.M. (BNA) 1070 (1968), in which the NLRB held in abeyance unfair practice charges until resolution of an already filed grievance.

The PLRB then went on to describe its own deferral policy in the following passage:

In cases of this sort the Board will hold its own procedures in abeyance and permit the parties opportunity to proceed with the grievance-arbitration procedure activated by the filing of the grievance. Before we can apply our *Dubo*-like approach, we must be certain that (1) a grievance has been filed; (2) that the charges filed are rooted in the parties' contract; and (3) that the conduct which is the subject of the grievance does not allege any enmity or discrimination toward the exercise of employe rights. Where these conditions are satisfied the Board will retain only limited jurisdiction so as to ensure upon timely filed notice that (a) the grievance arbitration proceedings were fair and regular; (b) the dispute was amicably settled or submitted promptly to arbitration; and (c) the result reached was not repugnant to the Act.[1]

1. The act referred to is the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101—1101.2301. *See American Federation of State, County and Municipal Employees v. Pennsylvania Labor Relations Board (AFSCME),* 108 Pa.Commonwealth Ct. 482, 529 A.2d 1188 (1987), where this court discussed and applied the *Pine Grove* standard.

> The Board will not dismiss the charges nor rescind the Complaint until we receive notification by the parties that the matter has been resolved by recourse to grievance-arbitration. At such point in time we will take the necessary action either dismissing the charges or entertaining limited review as spoken of above.

Under this policy, the first three prong test is to be applied by the PLRB in determining whether to hold the unfair practice charge proceedings in abeyance until the decision of the arbitrator is issued. If the PLRB does indeed decide to hold its own proceedings in abeyance, it then applies the second three prong test once the arbitrator's decision is issued.

The union argues that the PLRB erred in deferring to the grievance arbitrator because (1) the unfair labor practice charge was not rooted in the collective bargaining agreement but was instead rooted in the statutory obligation of the city to bargain the impact of its decision to implement the light duty policy, (2) the union properly alleged enmity and discrimination, and (3) the arbitrator did not address the statutory aspects of the charge.

The first two parts of the union's argument relate to the first three prong test from *Pine Grove*. However, the record shows that the union *agreed* that the PLRB proceeding should be held in abeyance until the arbitrator's decision was issued. Because the first three prong test is used by the PLRB to determine if its proceedings should be held in abeyance, and because the union agreed that the proceedings should be held in abeyance, it was unnecessary for the PLRB, or this court on review, to conduct an analysis under the first three prong test as that test is therefore waived in the present proceeding. We therefore need not address the first two parts of the union's argument.

This leaves only the last part of the union's argument, that the PLRB erred in deferring to the decision of the

grievance arbitrator because the arbitrator did not address the statutory aspects of the unfair labor practice charge.[2] The underlying premise of this argument is that the PLRB has engrafted a fourth requirement onto the second three prong test from *Pine Grove;* namely, that the arbitrator must have addressed the statutory aspects of the charge before the PLRB will defer to the arbitrator's decision. The union relies on the PLRB's decision in *PLRB v. Harrisburg School District,* 14 Pa.Pub. Employes R. ¶ 14032 (1983), as authority for this premise. However, as the PLRB points out in its brief, this court has already rejected the argument that this fourth requirement has been added to the *Pine Grove* test. *AFSCME,* 108 Pa.Commonwealth Ct. at 485–86, 529 A.2d at 1190. The court in *AFSCME* noted that *Harrisburg School District* was a proposed decision of a hearing examiner which was never appealed to the PLRB and the PLRB was therefore not bound by it. Because the fourth prong has not been added to the *Pine Grove* test, even if the arbitrator did not address the statutory aspects of the charge, the PLRB would not have erred in deferring to the arbitrator's decision.

In any event, our review of the arbitrator's decision reveals that he did indeed address the statutory aspects of the charge, *i.e.,* the duty of the city to bargain over adoption of the light duty policy. The arbitrator followed the PLRB's decision in *Shillington Borough Police Officers Association v. Shillington Borough,* 22 Pa.Pub. Employes R. ¶ 22074 (1991), which held that a decision to implement a light duty policy is within the discretion of management and is not a mandatory subject of bargaining.

Having found no error in the PLRB's decision to defer to the decision of the grievance arbitrator, we will affirm the PLRB order.

**2.** The statutory aspect of the charge refers to the union's allegation that the city had a statutory obligation to bargain with the union before implementing the light duty policy, as opposed to the contractual aspect of the charge which is the union's allegation that the implementation of the policy violated the collective bargaining agreement.

## ORDER

NOW, this 6th day of August, 1993, the order of the Pennsylvania Labor Relations Board, dated November 12, 1991, at No. PF–C–90–110–E, is affirmed.