**TEMPLE UNIVERSITY HEALTH SYSTEMS (Lower Bucks Hospital)**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 12, 1999.

Decided May 28, 1999.

John B. Neurohr, Harrisburg, for appellant.

David S. Fryman, Philadelphia, for appellee.

Before DOYLE, J., SMITH, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

The Pennsylvania Labor Relations Board (Board) appeals from an order of the Court of Common Pleas of Philadelphia County which reversed its final order certifying the International Union of Operating Engineers, Local 835, AFL–CIO (Union) as the exclusive representative of a collective bargaining unit consisting of certain nonprofessional employees of Temple University Health Systems at the Lower Bucks Hospital (Employer). We reverse.

On October 20, 1997, the Union filed a petition for representation with the Board pursuant to the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301. Subsequently, the Union and Employer entered into a memorandum of agreement, stipulating to the unit composition, the election site, the position of the ballot, the list of eligible voters and other matters related to the conduct of a representation election. The Board then scheduled a representation election among all full-time and regular part-time blue-collar nonprofessional employees.

Thereafter on December 16, 1997, the Board's election officer conducted a representation election among the eligible employees at Employer's premises. The ballots used at the election contained the description of the proposed collective bargaining unit and the following:

PLACE CROSS (X) MARK IN THE SQUARE OF YOUR CHOICE
MARK ONE SQUARE ONLY

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 835, AFL–CIO ☐

NO REPRESENTATIVE 1 ☐

1. Section 605(4) of PERA, 43 P.S. § 1101.605(4), and 34 Pa.Code § 95.51(b) specifically require that a choice of "No Representative" be included on the ballot.

2. Where employees of the Commonwealth are involved, this Court has direct appellate juris-

The tally of the ballots after the election was as follows: forty-one ballots for the Union; forty ballots for "No Representative"; and two ballots with the word "No" written in the box for "No Representative," instead of an "X" mark. The election officer voided the two ballots marked with "No" in the "No Representative" box and certified that the Union received a majority of the valid votes in favor of its representation. The representative of the Board thereafter issued a nisi order certifying the Union as the exclusive representative of the collective bargaining unit.

Employer then filed exceptions to the nisi order of certification, contending that the two ballots voided by the Board should have been counted as valid votes in favor of no representation, which would result in a majority of the voters rejecting the proposed representation by the Union. The Board denied Employer's exceptions and made the nisi order absolute and final.

On appeal, the trial court reversed the Board's final order of certification. The trial court concluded that the voters, who wrote "No" in the "No Representative" box, intended to vote in favor of no representation. The trial court further stated that because this matter concerns only "a common-sense reading ... of the intention of the two voters," rather than the Board's expertise in labor policy, the court is not required to give judicial deference to the Board's decision. The Trial Court's Opinion, p. 4. The Board's appeal to this Court followed.

■ Where, as here, an appeal from the final order of the Board is filed with the trial court first,[2] the scope of appellate review by the trial court and this Court is

diction over appeals from final orders of the Board rendered under PERA; all other appeals under PERA must first be filed with the courts of common pleas. *See* Sections 763 and 933(a)(1)(vii) of the Judicial Code, 42 Pa.C.S. §§ 763 and 933(a)(1)(vii).

identical and very narrow: the court must limit its appellate review of the Board's decision to determining whether the Board's findings are supported by substantial evidence or whether the conclusions drawn from those findings are reasonable, and not illegal, arbitrary or capricious. *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board,* 153 Pa. Cmwlth. 20, 620 A.2d 594 (1993), *appeal denied,* 536 Pa. 634, 637 A.2d 294 (1993). In this matter, the relevant facts found by the Board are undisputed.

The Board contends that (1) it reasonably concluded that the two ballots with the "No" mark in the "No Representative" box failed to indicate the clear and unambiguous intent of the voters and therefore should be voided; and (2) the trial court exceeded its scope of review by rejecting the reasonable conclusion reached by the Board and substituting its judgment for that of the Board.

In concluding that the two ballots in question should be counted as valid votes for no representation, the trial court relied on *West Shore School District,* 3 PPER ¶ 38 (1973), in which the Board concluded that although the two ballots containing the word "No" in the "No Representative" box were ambiguous, there was "a sufficient manifestation of intent" of the employees to vote for no representation.

Six years later in *Luzerne County,* 10 PPER ¶ 10227 (1979), however, the Board abandoned the "sufficient manifestation of intent" standard set forth in *West Shore* and adopted a new standard for determining the validity of the ballot, on which the voter makes ambiguous marks. In *Luzerne,* the six ballots were marked with the word "No" in the "No Representative" box, as in this matter. In voiding those ballots, the Board stated:

A 'No' written in the 'No Representative' box may be viewed by some as an expression of an intent to vote against representation. However, others may consider the use of the double negative ('No' to 'No Representation' means 'I want representation') to signify the opposite intent on the part of the voter. The Board, therefore, finds that when the intent of a voter is *less than clear and unambiguous or is readily susceptible to more than one interpretation,* as is the case herein, such a ballot will be considered void. The Board will not engage in guess work in this regard. (Emphasis added.)

The Board has since consistently applied the "clear and unambiguous intent" standard adopted in *Luzerne* to the ballots containing ambiguous marks. *See, e.g., Philadelphia Traffic Court,* 11 PPER ¶ 11298 (1980) (the voters clearly and unambiguously intended to vote for representation by the union when they wrote the local union number in the box next to the union name, instead of placing an "X" mark; and voters intended to vote in favor of representation when they placed an "X" mark inside the box for the union name and three additional "X" marks to the right of that box); *Dauphin County,* 14 PPER ¶ 14026 (1982) (the two ballots marked with a "Yes" in the box for the union name were counted as the votes for representation; however, one ballot marked with *a "Yes" in the "No Representative" box was counted as valid votes for no representation* ).

While acknowledging that the Board's decision in this matter is consistent with *Luzerne* voiding the ballots with the "No" mark in the "No Representative" box under the clear and unambiguous intent standard, the trial court rejected the Board's conclusion without even addressing whether such conclusion is reasonable. Instead, the trial court found the sufficient manifestation of intent standard under *West Shore* more "persuasive" than the *Luzerne* standard. The Trial Court's Opinion, p. 3. However, the relevant inquiry on appeal is not whether the reviewing court could have reached a different conclusion, but whether the conclusion reached by the Board is reasonable. *Ap-*

*peal of Cumberland Valley School District,* 483 Pa. 134, 394 A.2d 946 (1978); *Philadelphia Housing Authority.*

■ It is well established that the court reviewing the Board's decision should not interfere with the Board's expertise in the specialized field of labor relations. *School District of Philadelphia v. Pennsylvania Labor Relations Board,* 719 A.2d 835 (Pa. Cmwlth.1998). The determination of the validity of ballots is undoubtedly a matter well within the expertise of the Board, as the agency responsible for conducting representation elections under PERA. Based on its expertise and experience, the Board has concluded that the application of the new clear and unambiguous intent standard would eliminate guess work as to the voter's intent expressed on the ballot and that the new standard is therefore more appropriate than the sufficient manifestation of intent standard in determining the validity of the ambiguously marked ballot.

■ Applying the clear and unambiguous intent standard, the Board has concluded that although a "Yes" mark in the "No Representative" box establishes the clear and unambiguous intent of the employees to vote for no representation, the ballots with a "No" mark in the same box could be susceptible to more than one interpretation. *Dauphin; Luzerne.* As the Superior Court stated: "Double negatives defeat rather than help understanding. ('He cannot say that it is not raining.' Is it raining?)" *Commonwealth ex rel. Williams v. Miller,* 254 Pa.Super. 227, 385 A.2d 992, 995 (1978). Hence, the Board's conclusion that the two votes marked with the word "No" in the "No Representative" box failed to indicate the clear and unambiguous intent of the voters and therefore should be voided is reasonable.

In holding that if the Board's conclusions are reasonable, the final orders of the Board must be affirmed, the Pennsylvania Supreme Court reiterated in *Pennsylvania Labor Relations Board v. Butz,* 411 Pa. 360, 377, 192 A.2d 707, 716 (1963):

[T]his Court had said, time and again, that it will not lightly substitute its judgment for that of a body selected for its expertise whose experience and expertise make it better qualified than a court of law to weigh facts within its field. The court below should not have attempted to substitute its judgment for that of the State Board. . . .

As in *Butz,* the trial court in this matter clearly exceeded its scope of review in failing to give deference to the Board's reasonable interpretation of the voters' intent expressed on the ballots and instead substituting its own judgment for that of the Board.

Employer contends that the Board's conclusion is inconsistent with the decisions of the National Labor Relations Board (NLRB) and the federal courts interpreting the intent of the voters indicated on the ballots at the representation elections held under the National Labor Relations Act.

■ However, the cases decided under the National Labor Relations Act regulating the private labor relations are not binding on the Board in deciding the issues arising under PERA regulating the labor relations between the public employers and their employees. *Cumberland Valley School District.* The Supreme Court explained the legislative distinction between the National Labor Relations Act and PERA and the applicability of the federal decisions as follows:

Although these [federal] decisions may provide some guidance, we are mindful of the distinctions that necessarily must exist between legislation primarily directed to the private sector and that for public employes. The distinction between the public and private sector cannot be minimized. Employers in the private sector are motivated by the profit to be returned from the enterprise whereas public employers are custodian of public funds and mandated to perform governmental functions as economically and effectively as possible.

*Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 499–500, 337 A.2d 262, 264 (1975). *See also American Federation of State, County & Municipal Employees, Council 13 v. Pennsylvania Labor Relations Board,* 108 Pa.Cmwlth. 482, 529 A.2d 1188 (1987) (the federal decisions may be looked to only for guidance, not as a binding precedent, where the case involves similar labor policy concerns).

Moreover, as the Union points out, the ballots used by NLRB in the representation election are different in their format and semantics. The ballot contains a specific question, "Do you wish to be represented for the purpose of collective bargaining by [the identified union]?" The ballot then provides a box for "Yes" and a box for "No." As a result, NLRB and the federal courts have never decided the exact issue of the validity of the ballots marked with the word "No" in the "No Representative" box. Consequently, Employer's reliance on the federal decisions is misplaced.

Finally, Employer asserts that the Board's decision is inconsistent with the Pennsylvania Supreme Court's decisions which "vigorously protect the right to vote." Employer's Brief, p. 11. To support its assertion, Employer relies on the cases decided under the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591. *See, e.g., In re Petition of Cioppa,* 533 Pa. 564, 626 A.2d 146 (1993) (every rationalization should aim at saving the ballot rather than voiding it); *Norwood Election Contest Case,* 382 Pa. 547, 116 A.2d 552 (1955) (the power to void a ballot for minor irregularities must be exercised very sparingly and only for compelling reasons to prevent disfranchisement of voters at an election).

■ The issue in this matter is the validity of the ballots cast in the representation election conducted under PERA. Unlike the cases decided under the Election Code, the concern over disfranchisement of voters which may result from voiding ballots based on minor irregularities is not present in this matter. Moreover, the intent of the voters is also the touchstone in deciding the validity of ballots under the Election Code; thus, where the irregularities on the ballot create an ambiguity casting doubt on the voters' intention, the ballot must be declared void. *In re Recount of Ballots,* 457 Pa. 279, 325 A.2d 303 (1974); *James Appeal,* 377 Pa. 405, 105 A.2d 64 (1954). Thus, the cases decided under the Election Code do not support Employer's position in this matter.

Accordingly, the trial court erred in reversing the final order of the Board certifying the Union as the exclusive representative of the collective bargaining unit. The order of the trial court is reversed.

## ORDER

AND NOW, this 28th day of May, 1999, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed.